UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

OMEGA PATENTS, LLC,

        Plaintiff,

v.

FIRSTECH, LLC,

        Defendant.

C20-1344 TSZ

CLAIM CONSTRUCTION ORDER

THIS MATTER comes before the Court to construe certain claim terms of the patents-in-suit pursuant to <u>Markman v. Westview Instruments, Inc.</u>, 52 F.3d 967 (Fed. Cir. 1995), and <u>Phillips v. AWH Corp.</u>, 415 F.3d 1303 (Fed. Cir. 2005). Having reviewed the parties' respective opening and responsive briefs and supporting materials, including the patents-in-suit, the Court enters the following order.

**Background**

Plaintiff Omega Patents, LLC ("Omega") accuses defendant Firstech, LLC ("Firstech") of direct and indirect infringement of United States Patents Nos. 7,305,293 (the "'293 Patent") and 8,032,278 (the "'278 Patent"), as well as reissued United States Patents Nos. RE47,225 (the "'225 Patent") and RE47,354 (the "'354 Patent"). <u>See</u> Compl. at ¶¶ 7–10 & 24–37 (docket no. 1). All four patents-in-suit disclose vehicle tracking units. <u>See</u> '293 Patent (docket nos. 29-1 & 30-1); '278 Patent (docket nos. 29-2

CLAIM CONSTRUCTION ORDER - 1

& 30-2); '225 Patent (docket nos. 29-3 & 30-3); '354 Patent (docket nos. 29-4 & 30-4). Firstech manufactures and sells products under the brand DroneMobile. *See* Compl. at ¶¶ 14–17 (docket no. 1). The DroneMobile devices, when accompanied by paid subscriptions to DroneMobile services, provide smartphone control of certain functions of motor vehicles. *Id.* at ¶ 15–16; *see id.* at ¶ 14 (citing https://www.dronemobile.com/). Omega alleges that the DroneMobile modules infringe at least Claim 7 of the '293 Patent, Claim 1 of the '278 Patent, Claim 1 of the '225 Patent, and Claim 1 of the '354 Patent. *See id.* at ¶¶ 19–22.

Claim 7 of the '293 Patent, which is an independent claim, discloses a vehicle tracking unit comprising:

> a vehicle position determining device, a wireless communications device, and a controller connected to said wireless communications device and said vehicle position determining device;
> said controller being switchable to an armed mode when a user is away from the vehicle for cooperating with said wireless communications device and said vehicle position determining device to generate at least one speeding alert message notification for the user based upon the vehicle exceeding a speed threshold for longer than a predetermined time indicative of aggressive driving of the vehicle.

'293 Patent at Col. 24, Lines 22–33 (docket nos. 29-1 & 30-1). The '293 Patent includes the following block diagrams of an embodiment of the invention:



*Id.* at Fig. 1 (modified).

CLAIM CONSTRUCTION ORDER - 2



*Id.* at Fig. 2 (modified). Each illustration shows a vehicle tracking unit **25** (outlined in a green-highlighted solid line) mounted in a vehicle **21** (outlined in a yellow-highlighted dashed line). *See id.* at Col. 3, Lines 47–48. Figure 2 indicates that the vehicle tracking unit **25** has *inter alia* a controller **40** (highlighted in pink), which is connected to both a vehicle position determining device (for example, a Global Positioning System ("GPS") receiver) **42** (highlighted in blue) and a wireless communications device **44** (highlighted in purple). *See id.* at Col. 4, Lines 26–31.

CLAIM CONSTRUCTION ORDER - 3

The '278, '225, and '354 Patents contain diagrams that are identical to Figure 2 of the '293 Patent.  As to those other three patents-in-suit, each asserted claim (*i.e.*, Claim 1) is an independent claim.  Claim 1 of the '278 Patent provides:

> A multi-vehicle compatible tracking unit for a vehicle comprising a vehicle data bus extending throughout the vehicle, the multi-vehicle compatible tracking unit comprising:
> a vehicle position determining device;
> a wireless communications device;
> a multi-vehicle compatible controller for cooperating with said vehicle position determining device and said wireless communications device to send vehicle position information;
> said multi-vehicle compatible controller to be coupled to the vehicle data bus for communication thereover with at least one vehicle device using at least one corresponding vehicle device code from among a plurality thereof for different vehicles; and
> a downloading interface for permitting downloading of enabling data related to the at least one corresponding vehicle device code for use by said multi-vehicle compatible controller.

'278 Patent at Col. 25, Line 64–Col. 26, Line 15 (docket nos. 29-2 & 30-2).  Claim 1 of the '225 Patent reads:

> A vehicle tracking unit for a vehicle of a type comprising a vehicle data bus extending throughout the vehicle and at least one operable vehicle device connected thereto, the at least one operable vehicle device responsive to at least one data bus code on the vehicle data bus, the vehicle tracking unit comprising:
> a vehicle position determining device;
> a wireless communications device; and
> a controller spaced apart from the at least one operable vehicle device and connected to the vehicle data bus so that the vehicle data bus extends from said controller to the at least one operable vehicle device, said controller for cooperating with said vehicle position determining device and said wireless communications device to send vehicle position information to a **user**;

CLAIM CONSTRUCTION ORDER - 4

> said controller generating the at least one data bus code on the vehicle data bus to control the at least one operable vehicle device based upon a command signal received by said wireless communications devise;
> *the at least one operable vehicle device comprising a car starter device.*

'225 Patent at Col. 43, Lines 23–43 (docket nos. 29-3 & 30-3) (bold and underlined emphasis added; italics in original to reflect "additions made by reissue"). Claim 1 of the '354 Patent is the same as Claim 1 of the '225 Patent, except that the phrase "monitoring station" appears instead of "user" at the end of the clause beginning with "a controller." *See* '354 Patent at Col. 43, Lines 2–23 (docket nos. 29-4 & 30-4).

The parties disagree about the following claim terms, one of which appears in all four patents-in-suit, one of which is included in three of the patents-in-suit, and three of which relate only to the '293 Patent.

| Claim Term | '293 Patent | '278 Patent | '225 Patent | '354 Patent |
|---|---|---|---|---|
| "controller" | X | X | X | X |
| "said controller . . . for cooperating" | X |  | X | X |
| "said controller being switchable to an armed mode" | X |  |  |  |
| "predetermined time" | X |  |  |  |
| "indicative of aggressive driving of the vehicle" | X |  |  |  |

With regard to the first three terms, the parties propose competing definitions. As to the last two terms, Omega indicates that no interpretation is necessary because the language is clear, while Firstech offers substitute words for "predetermined time" and argues that the phrase concerning "aggressive driving" is indefinite.

CLAIM CONSTRUCTION ORDER - 5

**Discussion**

**A.     Claim Construction Standards**

The Court has both the authority and the obligation to construe as a matter of law the meaning of language used in a patent claim. <u>Markman</u>, 52 F.3d at 979. In doing so, the Court must consider the intrinsic evidence in the record, meaning the claims, the specification, and the prosecution history.[1] <u>Id.</u> The words of a patent claim are generally assigned their "ordinary and customary meaning." <u>Phillips</u>, 415 F.3d at 1312.[2] When the claim terms are clear enough to permit the trier of fact to perform its work, the Court need not engage in further analysis or attempt to rewrite or otherwise alter the language that has received the imprimatur of the United States Patent and Trademark Office ("PTO"). <u>See</u> <u>Ballard Med. Prods. v. Allegiance Healthcare Corp.</u>, 268 F.3d 1352, 1358 (Fed. Cir. 2001) ("<u>Markman</u> does not require a district court to follow any particular

---

[1] The specification is "the single best guide to the meaning of a disputed term." <u>Phillips</u>, 415 F.3d at 1315. If the specification reveals a definition given to a claim term that differs from the meaning it would otherwise possess, the inventor's lexicography trumps the ordinary and customary, or dictionary, construction. <u>Id.</u> at 1316. Similarly, the prosecution history evidences how the inventor understood the terms used in the patent. <u>Id.</u> at 1317. Because the prosecution history, however, represents the "ongoing negotiation" between the United States Patent and Trademark Office and the applicant, it might suffer from a lack of clarity and is often less useful for claim construction purposes than the specification. <u>Id.</u> In addition, although the prosecution history "can and should be used to understand the language used in the claims," it may not itself "enlarge, diminish, or vary" the limitations in the claims. <u>Markman</u>, 52 F.3d at 980.

[2] The ordinary and customary meaning of a claim term is the definition ascribed to it by "a person of ordinary skill in the art in question at the time of the invention." <u>Phillips</u>, 415 F.3d at 1313. The context in which a claim term is used might also be instructive. <u>Id.</u> at 1314. In addition, the other claims of a patent might illuminate the meaning of a term, through consistent usage of the same term, or inclusion in a dependent claim of an additional term not present in the related independent claim. <u>Id.</u> at 1314–15.

procedure in conducting claim construction.  It merely holds that claim construction is the province of the court, not a jury. . . .  As long as the trial court construes the claims <u>to the extent necessary</u> to determine whether the accused device infringes, the court may approach the task in any way that it deems best." (emphasis added)); <u>see also</u> <u>Static Control Components, Inc. v. Lexmark Int'l, Inc.</u>, 502 F. Supp. 2d 568, 575–76 (E.D. Ky. 2007).

B.    **Disputed Claim Terms**

   1.    **Single or Multiple Control System(s)**

With regard to the first two disputed terms, "controller" and "said controller . . . for cooperating," the parties' disagreement boils down to whether Claim 7 of the '293 Patent and Claim 1 of each of the other three patents-in-suit require that one control system perform all recited functions or whether different control systems may each accomplish one or more of the outlined tasks.  The claims at issue introduce "controller" with the indefinite article "a," and then refer back to "controller" with the definite article "said."  In patent parlance, when used in "open-ended claims containing the transitional phrase 'comprising,'" an indefinite article (i.e., "a" or "an") means "one or more."  <u>Convolve, Inc. v. Compaq Computer Corp.</u>, 812 F.3d 1313, 1321 (Fed. Cir. 2016) (quoting <u>KCJ Corp. v. Kinetic Concepts, Inc.</u>, 223 F.3d 1351, 1356 (Fed. Cir. 2000)). Unless an exception to this "general plural rule" applies, the appearance of definite articles (i.e., "the" or "said") to further define an element "simply reinvokes that non-singular meaning."  <u>See</u> <u>Baldwin Graphic Sys., Inc. v. Siebert, Inc.</u>, 512 F.3d 1338, 1342 (Fed. Cir. 2008).

Only in rare circumstances will an exception to the "general plural rule" be properly invoked, and only when "the patentee evinces a clear intent" to limit the article "a" to require exactly or solely one, as opposed to "at least one."  See KCJ Corp., 223 F.3d at 1356.  In ascertaining the patentee's intent and deciding whether to depart from the "general plural rule," the Court may, as in all matters of claim construction, consider the language of the patent claims, the specification, and the prosecution history.  See Baldwin, 512 F.3d at 1343 (citing Abtox Inc. v. Exitron Corp., 122 F.3d 1019, amended on other grounds by 131 F.3d 1009 (Fed. Cir. 1997), and Insituform Techs., Inc. v. Cat Contracting, Inc., 99 F.3d 1098 (Fed. Cir. 1996)); see also KCJ Corp., 223 F.3d at 1356 ("an applicant may disclaim before the PTO a plural interpretation and thus lose the benefit of the customary meaning of indefinite articles in patent claims").

For example, in Abtox, which involved a device and method for sterilizing medical instruments in partially ionized gas produced with high radio or microwave frequencies, the Federal Circuit concluded that the claim language, as interpreted in light of the specification, limited the invention to "a single gas-confining chamber."  122 F.3d at 1027.  Although "chamber" was initially preceded with the indefinite article "a," the patent claim further required (i) a "cavity positioned to couple microwave energy into said chamber," (ii) a "means for holding . . . materials to be sterilized within said chamber volume," and (iii) a member "positioned within said chamber . . . to provide a portion of the internal volume of said chamber shielded from . . . microwave energy," and thereby clarified that "only one chamber is in question."  Id. at 1022 & 1023–24

(emphasis added).  Notably, the specification contained a figure showing, and an explanation describing, only one chamber.  *Id.* at 1024.

       Similarly, in this case, the claim language and the specification support a singular interpretation.  Claim 7 of the '293 Patent requires that a controller be "connected to" both "*said* wireless communications device" and "*said* vehicle position determining device."  '293 Patent at Col. 24, Lines 23–25 (emphasis added).  Nothing in the claim language or the specification suggests that a vehicle tracking unit would have multiple wireless communications devices or multiple vehicle position determining devices.  Given that only one of each device is envisioned and that each device must be "connected to" the same controller, the text of Claim 7 must be interpreted as requiring only one controller.  *See Convolve*, 812 F.3d at 1321 (holding that, as to certain claims of the patent-in-suit, the patentee's "clear intent to tie the processor that 'output[s] commands to the data storage device' to the 'user interface'" limited the invention to a single processor, reasoning that, in contrast to other claims, which allowed for multiple processors, the particular claims required "the user interface to work with a single processor in performing all of the claim steps" (alteration in original)).

       Likewise, Claim 1 of the '278 Patent describes a single (multi-vehicle compatible) controller, which "cooperat[es]" with "*said* vehicle position determining device" and "*said* wireless communications device," and which is also "coupled to *the* vehicle data bus."  *See* '278 Patent at Col. 26, Lines 3–8 (emphasis added).  Although "vehicle data bus" is introduced with the indefinite article "a," as with the vehicle position determining and wireless communications devices, nothing in the '278 Patent indicates that a motor

vehicle might have more than one "data bus."  Thus, to accomplish the structure set forth in the '278 Patent, a single controller must be "coupled" to the sole vehicle data bus and "cooperat[e]" with each of the other singular devices.  Claim 1 of the '225 Patent and Claim 1 of the '354 Patent contain the same language as Claim 1 of the '278 Patent, namely "controller for cooperating with *said* vehicle position determining device and *said* wireless communications device," but in both the '225 and '354 Patents, the quoted clause is itself preceded by the definite article "*said*," even more strongly supporting the conclusion that, for purposes of the patents-in-suit, "controller" means exactly or only one controller.  *See* '225 Patent at Col. 43, Lines 34–36 (emphasis added); '354 Patent at Col. 43, Lines 13–15 (emphasis added).

   In addition, Figure 2 of the '293 Patent, which also appears in each of the other patents-in-suit, shows only one controller, and in discussing the preferred and other embodiments of the inventions, the specifications of the patents-in-suit never hint at the possibility of more than one controller.  Rather, the definite article "the" is repeatedly invoked, and with reference to Figure 2, "the controller" is described as "illustratively" including "a central processing unit (CPU) **50** or other logic circuitry which is connected to a clock signal generator **51** and a memory **52**," as well as "input/output circuitry **53** to interface with various vehicle devices."  '293 Patent at Col. 4, Line 64–Col. 5, Line 3; '278 Patent at Col. 5, Lines 50–56; '225 Patent at Col. 6, Lines 10–16; '354 Patent at Col. 6, Lines 23–29.  The Court concludes that the language of the asserted claims and the specifications of the patents-in-suit dictate a single controller.

CLAIM CONSTRUCTION ORDER - 10

A single controller, however, need not be a single device.  *See Automed Techs., Inc. v. Microfil, LLC*, 244 F. App'x 354, 356–58 (Fed. Cir. 2007) (affirming the district court's interpretation of "controller" to mean "a single control system [that] regulates the entire process," but clarifying that "the controller need not be limited to a single *device*, nor to any particular hardware or software" (alteration and emphasis in original)).  With this caveat in mind, the Court turns to the parties' respective proposed interpretations of "controller."  Omega asks the Court to construe the term as meaning "electronic circuitry that performs one or more control functions."  *See* Joint Claim Construction Chart at 1 (docket no. 27-1).  This definition does not meaningfully cabin the term "controller" to hardware that is within the scope of the invention, as opposed to structure already residing in the motor vehicle itself.  It also improperly limits the asserted patent claims by precluding the possibility of a controller incorporating software.  Firstech proposes the following construction: "a single device having a central processing unit or other logic circuitry, and input/output circuitry to interface with other vehicle devices, which may include other controllers."  *See id.*  Firstech's interpretation inappropriately restricts the claims at issue by requiring a single *device*, as opposed to a single *controller*, and by importing the elements of an illustrative description of a preferred embodiment.  *See Phillips*, 415 F.3d at 1323 (observing that the Federal Circuit has "repeatedly warned" against confining the claims of a patent to the specific embodiments described in the specification).  The Court rejects both parties' suggestions.

The Court instead adopts for the term "controller" an interpretation similar to the one used in *Automed Technologies*, namely "single control system."  This definition

captures the Court's reasoning concerning why the "general plural rule" does not apply in this circumstance, while not incorporating into the existing claim language any extraneous limitation.  In light of the Court's ruling, the term "said controller . . . for cooperating" need not be and is not separately construed.

      2.    **<u>Other Disputed Terms of Claim 7 of the '293 Patent</u>**

As to the three remaining phrases that the parties ask the Court to construe, the debate concerns semantics and the appropriate partitioning of claim language.  The parties propose substitute wording for the term "said controller being switchable to an armed mode," and they disagree about whether particular components of the phrase "based upon the vehicle exceeding a speed threshold for longer than a predetermined time indicative of aggressive driving of the vehicle" require further explanation or are indefinite.  For the following reasons, the Court concludes that the words of Claim 7 of the '293 Patent mean what they say and need no interpretation by the Court.

      a.    **<u>"Armed" Mode</u>**

Firstech asks the Court to define "armed" as meaning "operating," and seeks to rewrite the claim language at issue as follows:  "[said] controller being switchable from a mode in which it is not operating to a mode in which it is operating."  <u>See</u> Joint Claim Construction Chart at 2 (docket no. 27-1).  Omega counters that "armed mode" should be understood as a mode to which the controller may be switched "to cooperate with the wireless communications device to send an alert message."  <u>Id.</u>  The Court declines to adopt either of these interpretations.

CLAIM CONSTRUCTION ORDER - 12

Firstech's proposal merely offers a possible, but not entirely accurate, synonym for "armed."  In this context, "armed" connotes being "ready" or "able," as opposed to being "on" or actually "operating."  See OXFORD ENGLISH DICTIONARY (3d ed. 2016) (https://www.oed.com/view/Entry/10829?result=3&rskey=FySDit&) (defining "armed" as "prepared or equipped for a task or trial" or "fitted for a purpose"); see also MERRIAM-WEBSTER THESAURUS (https://www.merriam-webster.com/thesaurus/armed) (listing, among other synonyms for "armed" as an adjective, the following words:  primed, qualified, fit, go, prepared, ready, and set); ROGET'S INT'L THESAURUS (6th ed. 2001) (providing five categories of synonyms for "armed," including "prepared").

Omega's version does not separately define the disputed term "armed," but rather repeats verbiage that already appears in Claim 7 of the '293 Patent.  *Compare* Joint Claim Construction Chart at 2 (docket no. 27-1) (proposing to construe "said controller being switchable to an armed mode" as meaning "[t]he controller is switchable to an armed mode to cooperate with the wireless communications device to send an alert message") *with* '293 Patent at Col. 24, Lines 26–30 ("said controller being switchable to an armed mode . . . for cooperating with said wireless communications device . . . to generate at least one speeding alert message notification").  Using Omega's proposed interpretation would result in unnecessary redundancy.  The Court concludes that the clause "said controller being switchable to an armed mode" is sufficiently clear to permit a trier of fact to determine whether the accused devices infringe the patent, and the Court will not alter the language approved by the PTO.  *See Ballard Med.*, 268 F.3d at 1358; *see also Static Control*, 502 F. Supp. 2d at 575–76.

         **b.**       **Indefiniteness**

In challenging the phrase "indicative of aggressive driving of the vehicle" as indefinite, Firstech has inappropriately separated this text from the portion of the claim language that it modifies, namely "a speed threshold for longer than a predetermined time." Firstech asserts that the Court should revise "predetermined time" to "a specific period of time, determined in advance." *See* Joint Claim Construction Chart at 2 (docket no. 27-1). The Court, however, agrees with Omega that "predetermined time" is clear and need not be reworded as Firstech suggests. The entire clause "a speed threshold for longer than a predetermined time indicative of aggressive driving of the vehicle" is also clear. In numerical terms, 100 miles per hour ("mph") for five minutes constitutes an example of a "speed threshold" and "predetermined time" that are together "indicative of aggressive driving." *See* https://www.iihs.org/topics/speed (displaying the Insurance Institute for Highway Safety's summary of posted maximum speeds by state, with Texas having the highest limit of 85 mph); *see also* https://www.wsp.wa.gov/crime/report-something/aggressive-driving/ (reciting the Washington State Patrol's definition of aggressive driving as "[t]he commission of two or more moving violations that is likely to endanger other persons or property, or any single intentional violation that requires a defensive reaction of another driver").

As reflected in the foregoing discussion, when properly considered in context, the modifying phrase "indicative of aggressive driving of the vehicle" is not indefinite. The presumption that a patent is valid, which is set forth in 35 U.S.C. § 282(a), may be overcome on the ground of indefiniteness only if a patent's "claims, read in light of the

CLAIM CONSTRUCTION ORDER - 14

specification delineating the patent, and the prosecution history, fail to inform, with reasonable certainty, those skilled in the art about the scope of the invention." *Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 901 (2014).  In connection with an invalidity defense, the underlying facts must be proven by "clear and convincing evidence." *Microsoft Corp. v. i4i Ltd. P'ship*, 564 U.S. 91, 95 (2011).  Claim language "employing terms of degree has long been found definite where it provided enough certainty to one of skill in the art when read in the context of the invention." *Biosig Instruments, Inc. v. Nautilus, Inc.*, 783 F.3d 1374, 1378 (Fed. Cir. 2015).  The certainty that the law requires in patents is not greater than is reasonable and, in evaluating a claim for indefiniteness, the Court must take into account the inherent limitations of language, as well as the "modicum of uncertainty" that is the "price of ensuring the appropriate incentives for innovation."  *See id.* at 1378–79 (quoting *Nautilus*, 572 U.S. at 909).  A patent must merely be "precise enough to afford clear notice of what is claimed, thereby 'appris[ing] the public of what is still open to them.'"  *Id.* at 1378 (quoting *Nautilus*, 572 U.S. at 909 (alteration in original, quoting *Markman*, 517 U.S. at 373)).  The clause "a speed threshold for longer than a predetermined time indicative of aggressive driving of the vehicle" satisfies this standard, and Firstech has not met its burden of proving otherwise.

/ / /

/ / /

/ / /

/ / /

**Conclusion**

For the foregoing reasons, the Court construes the disputed claim terms as follows:

(1)   The term "controller," which appears ubiquitously within the four patents-in-suit, is interpreted as meaning "single control system."  In light of this ruling, the term "said controller . . . for cooperating" need not be construed.

(2)   The terms "said controller being switchable to an armed mode" and "predetermined time," which are included in Claim 7 of the '293 Patent, are sufficiently clear and need not be further defined.  The term "indicative of aggressive driving of the vehicle," which is also an element of Claim 7 of the '293 Patent, is not indefinite when considered together with the words that the phrase modifies.

IT IS SO ORDERED.

Dated this 22nd day of November, 2021.

*/s/ Thomas S. Zilly*
Thomas S. Zilly
United States District Judge